1

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7               FOR THE EASTERN DISTRICT OF CALIFORNIA

8  BRIANNA M. BROOKS, et al.,

9            Plaintiffs,

10       vs.                                No. 2:09-cv-3343-MCE GGH

11

12  COUNTY OF SAN JOAQUIN, et al.,

13            Defendants.                    ORDER
   _____/

14            Previously pending on this court's law and motion calendar for June 23, 2011,

15  was plaintiffs' motion to compel production of documents.  Benjamin Nisenbaum appeared for

16  plaintiffs.  Brent Jo appeared for defendants.  After reviewing the joint statement and hearing oral

17  argument, the court now issues the following order.

18  BACKGROUND

19            According to the second amended complaint, decedent, Dennis Brooks, who was

20  incarcerated at San Joaquin County Jail ("Jail") on November 22, 2008, was found dead in his

21  cell as a result of suicide by hanging.  Plaintiffs, who are children of decedent, allege that

22  decedent Brooks had a history of prior suicide attempts at the Jail.  (SAC, ¶ 16.)  On his

23  processing into the Jail on this occasion, decedent reminded Jail staff of his history of suicide

24  attempts.  (Id.)  He asked why he was not given the typical red colored inmate clothing provided

25  to inmates posing a danger to themselves or others.  (Id., ¶ 17. )  He also requested that he be

26  placed in Administrative Segregation due to his safety concerns.  (Id., ¶ 18.)  Prior to his suicide,

1

1   he had been heard yelling that he could not "take it anymore, and wanting to "kill myself." (Id., ¶

2   20.)  Through discovery, plaintiffs have become aware of a kite note sent by a neighboring

3   inmate, indicating that Brooks stated he was going to kill himself, but that Sheriff's deputies

4   thought it was funny.  Plaintiffs allege violations pursuant to 42 U.S.C. §1983 (wrongful death,

5   violation of decedents' rights, Monell liability).  The Second Amended Complaint also contains

6   state law causes of action for negligence, violation of Cal Civ. Code §52.1, and negligent hiring,

7   retention, training, supervision, and discipline.

8            The instant dispute concerns defendants' failure to produce documents responsive

9   to plaintiffs Request for Production Set One, under objections such as relevance, as well as

10   various claims of privilege, including Cal. Evid. Code § 1040 *et seq.*, and Cal. Penal Code §§

11   832.7 and 832.8.

12   DISCUSSION

13        I.  Applicability of Federal Law to Claims of Privilege

14            Federal law applies to privilege based discovery disputes involving federal claims,

15   even if allied with by pendent state law claims.  See, e.g., Pagano v. Oroville Hospital, 145

16   F.R.D. 683, 687 (E.D.Cal. 1993); Martinez v. City of Stockton, 132 F.R.D. 677, 681-83

17   (E.D.Cal. 1990).  Privileges are narrowly construed, because they impede the full and fair

18   discovery of the truth.  Eureka Financial Corp. v. Hartford Acc. and Indemnity Co., 136 F.R.D.

19   179, 183 (E.D. Cal. 1991).  Further, the party asserting a privilege has the burden to establish that

20   it applies.  See, e.g., United States v. O'Neill, 619 F.2d 222, 227 (3rd Cir. 1980).

21            The Supreme Court has reemphasized that privileges are not favored:

22        The common-law principles underlying the recognition of
         testimonial privileges can be stated simply.  "'For more than three
23        centuries it has now been recognized as a fundamental maxim that
         the public . . . has a right to every man's evidence.  When we come
24        to examine the various claims of exemption, we start with the
         primary assumption that there is a general duty to give what
25        testimony one is capable of giving, and that any exemptions which
         may exist are distinctly exceptional, being so many derogations
26        from a positive general rule.'"

2

1  Jaffee v. Redmond, 518 U.S. 1, 9, 116 S. Ct. 1923, 1927 (1996) (citing United States v. Bryan,

2  339 U.S. 323, 331, 70 S. Ct. 724, 730, 94 L. Ed. 884 (1950) (quoting 8 J. Wigmore, Evidence §

3  2192, p. 64 (3d ed.1940)); see also Maricopa Audubon Soc. v. U.S.F.S., 108 F.3d 1082, 1085-86

4  (9th Cir. 1997).

5      In cases presenting 42 U.S.C. § 1983 civil rights claims concurrently with state

6  law claims, courts disagree about the extent to which state privilege law remains applicable in

7  discovery disputes. The Supreme Court explicitly noted in Jaffee that the issue is unsettled.

8  Jaffe, 518 U.S. at 15 n.15, 116 S. Ct. at 1931 n.15 (noting disagreement concerning the proper

9  rule in cases in which both federal and state claims are asserted in federal court.)  This court has

10 found that in mixed federal and state claim cases, although federal law is ultimately binding, state

11 privilege law which is consistent with its federal equivalent significantly assists in applying

12 privilege law to discovery disputes.  See Pagano; Martinez; Cook v. Yellow Freight, 132 F.R.D.

13 548 (E.D. Cal. 1990).  Other courts, however, disagree.  See, e.g., Jackson v. County of

14 Sacramento, 175 F.R.D. 653, 654 (E.D. Cal. 1997) (stating that Pagano/Martinez/Cook have

15 been overruled).[1]  The other courts in this Circuit seemingly have overlooked binding precedent.

16 The Ninth Circuit continues to hold that "[i]n determining the federal law of privilege in a federal

17 question case, absent a controlling statute, a federal court may consider state privilege law."

18 Lewis v. United States, 517 F.2d 236, 237 (9th Cir. 1975) (citations omitted).

19

20      [1] Jackson is, respectfully, simply wrong in its proposition that Jaffe overruled Pagano,
Martinez, and Cook.  For starters, the cases were not referenced by Jaffe.  More importantly,
21 Jaffe itself expressly noted the disagreement on the extent to which federal privilege law was
informed by its state law counterpart, and expressly held that it would not rule on the issue.  "We
22 note that there is disagreement concerning the proper rule in cases such as this in which both
federal and state claims are asserted in federal court and relevant evidence would be privileged
23 under state law but not under federal law....we express no opinion on the matter."  Jaffe, 518 U.S.
at 15 (n.15), 116 S. Ct. at 1931.  Jackson is based on the questionable premise that the Supreme
24 Court's determination not to consider an issue impliedly overrules cases discussing the issue.
The cases that have followed Jackson's erroneous interpretation of Jaffe, seemingly without
25 reference to footnote 15 in Jaffe, are likewise flawed in this respect.  See Folb v. Motion Picture
Indus. Etc., 16 F. Supp. 2d 1164 (C.D. Cal. 1998); Humphreys v. Regents of University of Cal.,
26 2006 WL 335275 (N.D. Cal. 2006).

This court considers state law in mixed federal/state claims.  See Pagano.  While federal law is controlling, id. at 687, state law is nevertheless relevant, especially in mixed claims where one of the elements of the federal claim is that a *state* actor was acting under color of *state* law when the federal right was violated – a category which includes every 42 U.S.C. § 1983 action.[2]  It has been the policy of this court, "when state privilege law is consistent, or at least compatible, with federal privilege law," to read the two together "in order to accommodate the legitimate expectations of the state's citizens."  Id. at 688; accord Martinez, 132 F.R.D. at 681 ("application of state rules [is appropriate] when that application would not be inconsistent with federal law"); but see Folb v. Motion Picture Industry Pension & Health Plans, 16 F. Supp.2d 1164, 1170 (C.D. Cal., 1998) (refusing to consider state privilege law); Jackson, 175 F.R.D. 653, 654 (E.D. Cal. 1997) (same).  Several reasons justify this policy.  First, as previously noted, the Ninth Circuit has found that state law may inform the federal privilege question.  Second, the Supreme Court explicitly noted in Jaffe that the matter is unsettled.

Moreover, not only this court, but others as well, use state law to assist in defining the parameters of federal privilege.  See, e.g., Memorial Hospital etc. v. Shadur, 664 F.2d 1058, 1061 (7th Cir. 1981); Hysell v. Pliler, 2007 WL 273882 *1 (E.D. Cal. 2007); Gottleib v. Wiles, 143 F.R.D. 235, 237 (D.Colo. 1992); Wei v. Bodner, 127 F.R.D. 91, 94-95 (D.N.J. 1989); Unger v. Cohen, 125 F.R.D. 67, 69 (S.D.N.Y. 1989); Lora v. Board of Education, 74 F.R.D. 565 (E.D.N.Y. 1977).

Third, federal courts frequently look to state law for guidance in § 1983 lawsuits.  Indeed, the Supreme Court has recognized:

> In 42 U.S.C. § 1988, Congress 'quite clearly instructs [federal courts] to refer to state statutes' when federal law provides no rule of decision for actions brought under § 1983 . . . . [B]y its terms, §1988 authorizes federal courts to disregard an otherwise

---

[2]  Those who interpret the trilogy of Pagano, Martinez, and Cook as standing for the proposition that state privilege law is ultimately controlling in mixed claim situations have misread the cases.

applicable state rule of law only if the state law is 'inconsistent
with the Constitution and laws of the United States.'

Board of Regents, etc v. Tomanio, 446 U.S. 478, 484-85, 100 S. Ct. 1790, 1795 (1980) (citations

omitted).

  Further, the Court has acknowledged:

This statutory reliance on state law obviously means that there will
not be nation-wide uniformity on these issues [contemplated by
§1988].

Robertson v. Wegmann, 436 U.S. 584, 594 (n.11), 98 S. Ct. 1991, 1997 (1978).  See also Moor

v. County of Alameda, 411 U.S. 693, 701-702, 93 S. Ct. 1785, 1791-1792 (1973) (§ 1988 does

not permit wholesale incorporation of state causes of action, but state law may supplement

established federal law).  The preceding Supreme Court cases, while not directly on-point with

the privilege issues presented by this discovery motion, nevertheless stand as strong authority for

the principle that application of state law is not foreign to § 1983 jurisprudence.  Lower court

cases such as Kelly, concluding "[i]t would make no sense to permit state law to determine what

evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to

protect citizens from abuses of power by state and local authorities," Kelly v. City of San Jose,

114 F.R.D. 653, 656 (N.D. Cal. 1987), assuming such cases advocate no role for state law, fail to

consider congressional intent that state law play an important, and at times dispositive, role in §

1983 litigation.[3]

  Fourth, recognition of important state interests which do not conflict with federal

law is a bedrock principle of our federal system.  "Consideration under the Supremacy Clause

starts with the basic assumption that Congress did not intend to displace state laws."  Maryland v.

Louisiana, 451 U.S. 725, 746, 101 S. Ct. 2114, 2128 (1981) (preemption case).  While it is at

---

[3] While the notion of national uniformity in federal practice, assuming that such is
possible, is a worthy goal for which to strive in the usual situation, Congress was less concerned
with national uniformity in setting up the civil rights statutory provisions of § 1981 et seq. than it
was with the usurpation of state law where such was not necessary.

times necessary to flex the federal muscle when federal and state law conflict, such flexing

should be done only as a last resort.  While preemption is not the issue here, there is no reason to

ignore basic principles of federalism in applying privilege law.

Finally, this entire action, including the federal § 1983 claim, could have been

brought in state court.[4]  The state court would apply state privilege law.  In addition, in a federal

court civil rights case in which the federal claims drop out, it is not beyond the pale to have a

case in which supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, is exercised over only

state claims.  In such cases, only state privileges seemingly would apply.  Thus, in mixed claim

cases where federal and state privileges are consistent, federal cases which fail to even consider

state privilege law run an unnecessary risk of creating ad hoc, or varyingly stated, privilege

standards, depending on whether the lawsuit is brought in state or federal court, or whether

federal claims ultimately survive.[5]

The inevitable question is – if the state and federal privileges at issue are

consistent, why not simply apply federal privilege law?  As discussed in Pagano, the point of

considering state law as a guide is not to determine whether a specific privilege exists, but to

determine how to perform the "balancing" that most privilege determinations, state or federal,

require.  Judges frequently are tempted to create multi-pronged tests for deciding federal

common law privilege issues, born from individual creativity (and sometimes from the myopia of

having considered the issues in particular cases).  In contrast, similar state privileges frequently

are codified privileges which have received the attention and consideration of the peoples'

representatives in the respective legislatures, including competing considerations of any

---

[4]  Federal courts have original, but not exclusive, jurisdiction over § 1983 claims pursuant to 28 U.S.C. § 1343; thus, state courts are fully authorized to hear §1983 claims.  Allen v. McCurry, 449 U.S. 90, 101 S. Ct. 411 (1980).

[5]  Cf. Menses v. U.S. Postal Service, 942 F. Supp. 1320, 1322 (D. Nev. 1996) (since Federal Tort Claims Act cases can be brought only in federal court, there is a need for national uniformity in rules of evidence, and no corresponding need to apply state privilege law even though the substance of the claims is decided by reference to the state law).

balancing applicable to those privileges.  In terms of setting policy, the wisdom of the collective legislature is generally greater than the wisdom of particular judges.  Our system of government is based on this premise.  Moreover, the standards set forth by the legislature are generally more structured and more specific, and therefore provide a uniform starting point for any analysis. Therefore, it makes little sense to avoid using as a guidepost, standards the legislature has already provided.

For all of the above reasons, in deciding whether privilege should preclude disclosure of documents in a civil rights case, this court will continue to consider applicable state statutes establishing policy and criteria for disclosure.  <u>Jackson</u>, <u>supra</u> and its progeny are incorrect in their premise that the undersigned's cases have been overruled, and respectfully, incorrect in their substance.

II. <u>Governmental Privileges</u>

The federal privilege applicable to the government interest in preserving confidentiality of law enforcement records has various names: (1) the "official information privilege," <u>Sanchez v. City of Santa Ana</u>, 936 F.2d 1027, 1033 (9th Cir. 1991) (employment discrimination case which raised only federal claims); (2) the "law enforcement privilege," <u>In re Department of Investigation of City of New York</u>, 856 F.2d 481, 483-84 (2d Cir. 1988) (applying privilege to protect investigative agency with dual criminal and civil functions); <u>Morrissey v. City of New York</u>, 171 F.R.D. 85, 90 (S.D.N.Y. 1997) (finding, with guidance from state law enforcement privilege, that law enforcement privilege is somewhat narrower than official information privilege); and (3) a type of "executive privilege," <u>Siegfried v. City of Easton</u>, 146 F.R.D. 98, 101 (E.D. Pa. 1992).  The federal privileges are based on the following rationale:

> The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.

7

In re Dept. of Investigation, 856 F.2d at 484.

This federal "qualified" governmental privilege is consistent with California statutes according a qualified privilege to peace officer personnel records.[6] Cal. Penal Code § 832.7.[7] Disclosure requires "good cause" (Cal. Evid. Code §1043),[8] relevance, and unavailability by other means (Cal. Evid. Code §1045). [9]

---

[6] Defendants cite in part Cal. Evid. Code § 1040 regarding the official information privilege; however, the discussion will focus on the federal counterpart and more pertinent state statutes.

[7] Cal. Penal Code § 832.7 provides in part:

(a)  Peace officer or custodial officer personnel records and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code.

[8] Cal. Evidence Code § 1043 provides in part:

(a)     In any case in which discovery or disclosure is sought of peace custodial officer personnel records . . . the party seeking the discovery or disclosure shall file a written motion with the appropriate court or administrative body. . .
(b)     The motion shall include ... (3) Affidavits showing good cause for the discovery or disclosure sought ...

[9] Cal. Evid. Code § 1045 provides:

(a) Nothing in this article shall be construed to affect the right of access to *records of complaints, or investigations of complaints,* or discipline imposed as a result of such investigations, concerning an event or transaction in which the peace officer or custodial officer ... participated, or which he or she perceived, and *pertaining to the manner in which he or she performed his or her duties, provided that information is relevant* to the subject matter involved in the pending litigation.

(b) In determining relevance the court shall examine the information in chambers in conformity with Section 915, and shall exclude from disclosure:

(1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought.

1     The California statutes codifying the governmental privilege balance the need for

2  disclosure with the government's legitimate need to acquire and maintain confidential

3  information for sensitive activities.  See County of Los Angeles v. Superior Court, 18 Cal. App.

4  4th 588, 22 Cal. Rptr. 2d 409 (1993); People v. Superior Court for County of Sacramento, 19

5  Cal. App. 3d 522, 97 Cal. Rptr. 118 (1971).  As these cases demonstrate, the California

6  Legislature understood quite well the need for some secrecy in government affairs, and was

7  aware that permitting unrestricted disclosure might chill the ability of government officials to

8  obtain candid, confidential information from persons otherwise reluctant to become involved or

9  influenced by interests of self-preservation.  It is critical to note that Cal. Evid. Code § 1045

10  strikes the state balance in favor of disclosing internal investigations pertaining to the manner in

11  which a peace officer performed his or her duties, *so long as they are relevant* to pending

12  litigation.  Accordingly, relevance is the dispositive factor in directing disclosure of internal

13  ////

---

15  (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code.

17  (3) Facts sought to be disclosed which are so remote as to make disclosure of little or no practical benefit.

18  (c) In determining relevance where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual personnel records.

(emphasis added.)

22  The undersigned has found the proviso of § 1045 that information will be deemed per se irrelevant if it includes "complaints concerning conduct occurring more than five years before the event or transaction which is the subject of the litigation," too rigid to comport with federal law, in which "remoteness" is a matter generally weighed in determining the relevance of particular information.  "[T]he overall balancing provisions contained within [Fed. R. Civ. P.] 26(b) [dictate that] . . . [t]he court must carefully assess the request for discovery in light of . . . the remoteness of sought discovery to the issues in the case."  Martinez, 132 F.R.D. at 682.  That analysis is confirmed.

affairs investigations.[10]

III.   <u>Analysis</u>

Categories of documents sought are job applications of defendant Sheriff's Officers Casanelli, Hurtado, Hughes, Samaniego and Higgins, their background history, their discipline records, and investigations and/or documentation of all suicide attempts at the Jail for five years prior to the November 22, 2008 incident at issue.  Disposition of the requests will be made with the aforementioned standards in mind.

<u>Number 3</u> - <u>Defendant Officers' Job Applications</u>

The potential relevance of these documents is so remote that document discovery will not be permitted.  Should plaintiffs seek information regarding the defendant officer's training in regard to suicide attempts, or lack thereof, they may so question the officer at his deposition.

<u>Number 4</u>- <u>Documents Containing Background History of Officer Defendants</u>

This information has the potential to invade the privacy rights not only of the defendant officers but more importantly, the privacy rights of third parties who played no part in this litigation, but merely provided the background investigators with information they thought was confidential.  Such third parties may be dissuaded in future from providing confidential information to the San Joaquin County Sheriff's Department which will then be at a disadvantage in its ability to investigate potential new employees.  In any event, this information may be obtained more directly through deposition.  Therefore, this request is denied.

<u>Number 7</u> - <u>Records Relating to Discipline Against Defendant Officers</u>

The requested documents, as they relate to failure to protect inmates or excessive force only, and only in a jail setting, shall be produced, but only insofar as the investigation

---

[10]  Internal affairs investigations are "investigations of complaints" covered by Cal. Evid. Code § 1045.  <u>See</u> <u>City of Fresno v. Superior Court</u>, 205 Cal. App. 3d 1459, 253 Cal. Rptr. 296 (1988).

1   resulted in discipline (that is what is requested).  Records which resulted in the officer's

2   exoneration are not required to be produced.  Documents produced pursuant to this request may

3   be produced pursuant to a protective order.

4   Number 14 - Records of Investigations or Documents of all Suicide Attempts at the Jail for Five

5   Years Prior to November 22, 2008

6           After balancing pursuant to the authority outlined above, it is clear that the

7   potential relevance of this information far outweighs the asserted privacy rights which can be

8   safeguarded through a protective order.  Plaintiffs' motion is granted in regard to this request.

9   CONCLUSION

10          For the reasons stated in this opinion, IT IS ORDERED that:

11          1.  Plaintiffs' motion to compel production of documents, filed June 6, 2011, (dkt.

12   # 22), is granted in part and denied in part.

13          2.  Defendants shall produce discovery as specified herein within twenty-one (21)

14   days of this order.  Production may take place pursuant to a stipulated protective order.

15   DATED: July 5, 2011                              /s/ Gregory G. Hollows

16                                                   _____
                                                     U. S. MAGISTRATE JUDGE
17   GGH:076/Brooks3343.dsy.wpd

18

19

20

21

22

23

24

25

26

                                    11